[Cite as *State v. Vicario*, 2018-Ohio-4217.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106373**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ERIK J. VICARIO**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-597651-A

**BEFORE:** Laster Mays, J., E.T. Gallagher, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** October 18, 2018

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender

By:   Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Jennifer A. Driscoll
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1}   Defendant-appellant Erik J. Vicario ("Vicario") appeals his convictions and asks this court to vacate and remand for a new trial.   After a review of the record, we affirm.

{¶2} Vicario was found guilty of one count of aggravated murder, a first- degree felony, in violation of R.C. 2903.01(A); one count of murder, a first-degree felony, in violation of R.C. 2903.02(B); four counts of attempted murder, first-  degree felonies, in violation of R.C. 2903.02(A); ten counts of felonious assault, second-degree felonies, in violation of R.C. 2903.11(A)(1) and (2); and one count of having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(3). Each count, with the exception of the having weapons while under disability count, included one- and three-year firearm specifications.   After a bench trial, the trial court sentenced Vicario to an aggregate sentence of 31 years to life imprisonment.

## I.    Facts

{¶3} On the evening of May 10, 2015, a group of people were having a party in front of an apartment complex.   Tanazha Watson ("Watson") arrived at the apartment complex and started speaking with Tyshaun Jenkins ("Jenkins").   Jenkins's girlfriend, Tunisha Jackson ("Jackson") became upset because she thought Watson and Jenkins were flirting.   Before Jackson could approach the couple, Watson left to go to the store with her sister, Dazhanae Dowell ("Dowell"), Vicario's girlfriend.   Dowell, Watson, and Vicario arrived at the convenient store about a block away from the apartment complex.   Upon their arrival, Dowell and Watson were confronted by Jackson and her friends over the flirtatious behavior, and a fight ensued.   Vicario tried to break up the fight, but was unable to do so, and the police were called.   Once the police arrived, the fight stopped.   The two groups went their separate ways.   Tariaha Matthews ("Matthews"), had gone to the store with Jackson, left with Dowell, and went back to Dowell's home.

{¶4} Vicario was also at Dowell's home, expressed that he was upset with the girls that fought Dowell and Watson, and wanted to exact revenge. Vicario asked Matthews to show him where they lived so that he could fight them for jumping Dowell. They drove to the apartment building where Jackson returned to the party, and Matthews showed Vicario where Jackson lived. Afterwards, Matthews and Vicario returned to Dowell's home. Ten minutes later, Vicario left Dowell's home and went back to the apartment complex, where Vicario fired multiple gun shots at the group partying outside. Michael Matthews ("M. Matthews"), Matthews's father, was killed. Ronald Derrett ("Derrett"), Jackson, Jenkins, and Awilda Carroll were shot. At trial, Derrett identified Vicario as the person who shot him.

{¶5} Terrance Colvin ("Colvin") testified that Vicario confessed to him that he killed Matthews. Colvin also testified that Vicario abused and intimidated everyone that lived in Dowell's home, including Dowell. Colvin testified that Vicario expressed remorse for killing M. Matthews, stating that he was not supposed to die. Dowell testified that Vicario confessed to her, the morning after the shooting, that he had done something bad. Vicario stated that he shot the people that were fighting with Dowell.

{¶6} Although initially Dowell did not tell the police the entire story about what happened, she had a change of heart after seeing Matthews shortly after Dowell's own mother died. Dowell felt badly that Vicario killed Matthews's father. Dowell also testified that she was afraid of Vicario because she was previously abused by Vicario to the point where she needed to be hospitalized. Vicario's trial counsel objected to this testimony and moved for a mistrial. The state argued that Dowell's statements were not being used for the truth of the matter asserted, but rather to explain why Dowell was afraid of Vicario and therefore did not disclose information to the police. The trial court denied defense counsel's motion for a mistrial.

{¶7} At the end of the trial, the trial court found Vicario guilty of all counts and sentenced him to 31 years to life imprisonment. Vicario filed a notice of appeal and assigned four errors for our review:

I. The verdicts were not supported by the manifest weight of the evidence, and, therefore, the convictions violated Vicario's rights to a fair trial and due process of law as protected by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution;

II. The trial court violated Vicario's right to a fair trial and to due process of law as protected by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Sections 10 and 16 of the Ohio Constitution when it denied his motion for a mistrial;

III. Prosecutorial misconduct in the presentation of evidence and in closing argument deprived Vicario of his right to a fair trial and due process of law as protected by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Sections 10 and 16 of the Ohio Constitution; and

IV. Vicario's right to the effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Section 10 of the Ohio Constitution was violated when his counsel did not object to highly prejudicial and irrelevant testimony at trial and to highly prejudicial and improper statements by the prosecutor during rebuttal closing argument and he failed to seek a continuance to allow for finding a missing witness.

## II. Manifest Weight of the Evidence

### A. Standard of Review

{¶8} As we have noted before,

a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997). Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955).

*State v. Patterson*, 2017-Ohio-8318, 99 N.E.3d 970 (8th Dist.), ¶ 15.

**{¶9}** Therefore when,

> [a]nalyzing a claim under the manifest weight standard requires us to "review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed[.]" *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). We are required to give "due deference" to the factfinder's conclusions because "the demeanor of witnesses, the manner of their responses, and many other factors observable by [the factfinder] * * * simply are not available to an appellate court on review." *State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 58, citing *Thompkins*; *State v. Bailey*, 8th Dist. Cuyahoga No. 97754, 2012-Ohio-3955, ¶ 11, quoting *State v. Bierbaum*, 3d Dist. Seneca No. 13-88-18, 1990 Ohio App. LEXIS 1204 (Mar. 4, 1990). "Further, * * * [we] must keep in mind that questions of weight and credibility are primarily for the trier of fact to determine." *State v. Irby*, 7th Dist. Mahoning No. 03 MA 54, 2004-Ohio-5929, ¶ 39, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Accordingly, reversing a previous conviction and ordering a new trial under a manifest weight of the evidence claim should be saved for the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Bridges*, 8th Dist. Cuyahoga No. 100805, 2014-Ohio-4570, ¶ 67, citing *Thompkins*.

*Id.* at ¶ 16.

**B.    Law and Analysis**

**{¶10}** In Vicario's first assignment of error he argues that his convictions were against the manifest weight of the evidence.    Specifically, he argues that the evidence was too riddled with contradiction and uncertainty to support guilty verdicts.    First, Vicario challenges Dowell's testimony concerning his abusive behavior.    Vicario also contends that the testimony of Dowell and Colvin were unreliable because they both made deals with the state in exchange for their testimony.    Vicario argues that Derrett's testimony about being able to identify Vicario as the shooter was inconsistent and untrue.    Finally, Vicario challenges the ballistic evidence regarding the shell casings from the gun used in this case.

**{¶11}** Dowell testified that she initially did not tell the police that Vicario confessed to the

shooting because she was afraid of him. This testimony was elicited by the state in a series of questions regarding Vicario's and Dowell's relationship. The state reasoned that testimony of Vicario's abusive behavior was necessary to show why Dowell would react or act as she did. Dowell then testified that Vicario told her the following day that he messed up and "shot those people." Matthews testified that she showed Vicario where to find the people from the fight at the convenience store. Then approximately ten minutes later, Vicario left Dowell's home. (Tr. 410-412.) After learning of the shooting and going to the scene, Matthews informed the police that "[Vicario] did it." (Tr. 416.) The police asked how did she know, and she responded, "I showed [Vicario] where he lived and I just felt like nobody else had any other motive to go shoot anybody." (Tr. 417.)

{¶12} Colvin testified that Vicario admitted to him that he felt bad that [Vicario] killed M. Matthews and he was not the intended target. Vicario challenges Colvin's and Dowell's credibility because they made deals with the state in exchange for their testimony. However, the trial court was aware of the deals that the state offered Colvin and Dowell in exchange for their testimony. Additionally, defense counsel extensively cross-examined Colvin and Dowell regarding their deals.

> When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

*State v. Piggee*, 8th Dist. Cuyahoga No. 101331, 2015-Ohio-596, ¶ 29.

{¶13} Finally, as the detectives were investigating the homicide of M. Matthews, a shell casing found in Watson's home where Vicario was occasionally living matched the casings located at the crime scene. The ballistics examiner determined that the casing was fired from the same

firearm. Thereafter, there was a peer review from two other ballistic examiners, each concluding that the 13-shell casings found at the crime scene were fired from the same unrecovered gun that fired the shell casing found in Watson's home. The three examiners were in 100 percent agreement. This evidence including the testimony of the witnesses were judged to be credible by the trier of fact.

> The trier of fact is in the best position to determine whether the proffered testimony is credible. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. We do not find that this is the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

*State v. Young*, 8th Dist. Cuyahoga No. 106211, 2018-Ohio-3047, ¶ 29.

{¶14} After reviewing the evidence submitted at trial and the testimony of the witnesses, we find that Vicario's convictions were not against the manifest weight of the evidence and overrule his first assignment of error.

## III. Denial of Motion for Mistrial

### A. Standard of Review

{¶15} "The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001), citing Crim.R. 33, and *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987)." *State v. Truhlar*, 8th Dist. Cuyahoga No. 103312, 2016-Ohio-5338, ¶ 31. An abuse of discretion implies that the trial court's ruling was "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### B. Law and Analysis

{¶16} In Vicario's second assignment of error, he argues that the trial court violated his

right to a fair trial and to due process of law when it denied his motion for a mistrial. Specifically, Vicario argues that the trial court should have granted Vicario's motion for a mistrial because the state's questioning of Dowell about Vicario's abusive behavior was highly prejudicial and improper evidence. Vicario also argues that the testimony and line of questioning was cumulative and prejudicial.

> In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the [trier of fact] still would have found the appellant guilty. *State v. Sopko*, 8th Dist. Cuyahoga No. 90743, 2009-Ohio-140, at ¶ 55, citing *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984); *State v. Dixon*, 8th Dist. Cuyahoga No. 68338, 1997 Ohio App. LEXIS 915 (Mar. 13, 1997). When the prosecutor's comments are found to be improper, it is not enough that there is sufficient other evidence to sustain a conviction. Instead, it must be clear beyond a reasonable doubt that absent the prosecutor's comments, the [trier of fact] would have found defendant guilty. *State v. Clay*, 181 Ohio App.3d 563, 576, 2009- Ohio-1235, 910 N.E.2d 14, 23, citing *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). Stated another way, "a defendant's substantial rights cannot be prejudiced where the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist.), citing *State v. Williams*, 38 Ohio St.3d 346, 349-350, 528 N.E.2d 910 (1988).

*State v. Williams*, 8th Dist. Cuyahoga No. 95796, 2011-Ohio-5483, ¶ 67.

{¶17} The state's questioning of Dowell's relationship with Vicario was as follows:

State:     Was there a reason that his mom wouldn't want — your mom wouldn't want [Vicario] to be there?

Dowell:    Yeah, because we would fight a lot.

* * *

State:     Was he ever violent with you?

Dowell:    Yes.

State:     How was he violent with you?

Defense objection sustained by the court.

State:      What did he do to you?

Dowell:     He used to hit me.

Defense objection sustained by the court.

* * *

State:      The previous day you said you were in a fight with Mr. Vicario?

Dowell:     Yes.

State:      After the fight did you go anywhere?

Dowell:     I went to the hospital.

(Tr. 236 - 238.)   Defense thereafter objected and the trial court responded that "if you're just trying to show that he's a bad guy, that's sustained."   (Tr. 238.)   The state responded that it [the state] was not trying to show that Vicario was a bad guy but was getting to the point.   The state continued its questioning.

State:      Why are you afraid of Mr. Vicario?

* * *

Dowell:     He's put his hands on me multiple times.

State:      Has he ever stated anything to you that makes you afraid of him?

Dowell:     Yes.

State:      What?

Dowell:     That he's killed other people.

State:      Who?

Dowell:     Rob.

(Tr. 239.)   The defense objected and proffered for the record.

{¶18} After reviewing this testimony, we find that if any error exists, it is harmless error.

"Harmless error is defined as 'any error, defect, irregularity or variance which does not affect substantial rights * * *.' Crim.R. 52(A). When the error does not affect a substantial right, it 'shall be disregarded.' *Id*." *State v. Lutz*, 8th Dist. Cuyahoga No. 80241, 2003-Ohio-275, ¶ 97.

**{¶19}** Vicario also contends that Dowell's testimony was used to show that because Vicario was violent or had allegedly killed before, then he killed in this case.

> "'Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character.'" *State v. Ceron*, 8th Dist. Cuyahoga No. 99388, 2013-Ohio-5241, ¶ 67, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15, citing *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). However, certain exceptions exist to this common law rule. *See* R.C. 2945.59, Evid.R. 404(B).

*State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 71.

**{¶20}** However, the state contends that Dowell's testimony was used to show why Dowell was afraid of Vicario and did not disclose the truth to the police during their initial questioning. The trial court listened to the other testimony, reviewed the evidence, and was able to judge the credibility of each witness. It appears that the court "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987), quoting *State v. White*, 15 Ohio St.2d 146, 239 N.E.2d 65 (1968); *State v. Lott*, 51 Ohio St.3d 157, 166-167, 555 N.E.2d 644 (1990); *State v. Hickenbottom*, 8th Dist. Cuyahoga No. 58253, 1991 Ohio App. LEXIS 1139, 3 (Mar. 21, 1991). Reviewing the record, we find that it reveals that the trial court did not consider irrelevant or prejudicial evidence.

**{¶21}** Vicario's second assignment of error is overruled.

**IV. Prosecutorial Misconduct**

**{¶22}** In Vicario's third assignment of error, he argues that prosecutorial misconduct in the presentation of evidence and in closing argument deprived Vicario of his right to a fair trial and due process of law.

> The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor. (Citations omitted.) *State v. Eisermann*, 8th Dist. Cuyahoga No. 100967, 2015-Ohio-591, ¶ 43. Prosecutorial misconduct constitutes reversible error only in rare cases. *State v. Keenan*, 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993).

*State v. Hunt*, 8th Dist. Cuyahoga No. 105689, 2018-Ohio-1637, ¶ 23.

**{¶23}** Vicario contends that the line of questioning used by the state during Dowell's testimony prejudiced him. He also argues that the state's closing argument violated his right to a fair trial. Vicario points to the state's statement regarding the witnesses that testified against Vicario during the trial. The state stated, "they [the witnesses] risk a great deal. The moment they walk out of court, that their life might be in jeopardy." (Tr. 592.) The state was referring to earlier testimony given by one of the witnesses that was present during the fight at the convenience store. When the prosecution asked her if she could point to any males that were present for the fight at the store, she responded, "You really going to ask me that question?" (Tr. 113.) The witness testified she was afraid to identify Vicario in open court.

**{¶24}** However, Vicario did not object to the state's closing argument at trial. Thus, he has waived the argument, for all but plain error.

> In the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable and fundamental so that it should have been apparent to the trial court without objection. *See State v. Tichon*, 102 Ohio App.3d 758, 767, 658 N.E.2d 16 (1995). Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996). Notice of plain error is to be taken with utmost

caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83, 656 N.E.2d 643 (1995).

*State v. Potter*, 8th Dist. Cuyahoga No. 81037, 2003-Ohio-1338, ¶ 43.

**{¶25}** In addition,

[g]enerally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394 (1987); *State v. Papp*, 64 Ohio App.2d 203, 412 N.E.2d 401 (1978). An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984).

*Id.* at ¶ 46.

**{¶26}** Also,

[t]he misconduct of a prosecutor cannot be grounds for error unless the conduct deprives the defendant of a fair trial by prejudicially affecting the substantial rights of the accused. *State v. Lane*, 108 Ohio App.3d 477, 483, 671 N.E.2d 272 (1995). In a bench trial, the trial court is presumed to rely only on relevant, material and competent evidence in arriving at its judgment. *Id.* at 484, citing *State v. Richey*, 64 Ohio St.3d 353, 357-358, 595 N.E.2d 915 (1992).

*State v. Williams*, 8th Dist. Cuyahoga No. 77153, 2000 Ohio App. LEXIS 4767 (Oct. 12, 2000).

**{¶27}** In our review of Dowell's testimony and the state's statements in closing arguments, we cannot determine that Vicario was prejudiced or deprived of a fair trial. Outside of the testimony or the closing arguments, there is still an overwhelming amount of evidence that sustains the trial court's finding of Vicario's guilt. Vicario has not sufficiently demonstrated that he was substantially prejudiced.

**{¶28}** Vicario's third assignment of error is overruled.

## V.     Ineffective Assistance of Counsel

### A.     Standard of Review

**{¶29}** In order to substantiate a claim of ineffective assistance of counsel,

[a] defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Id*. at 688.

When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.*

*State v. Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, ¶ 39-40.

## B. Law and Analysis

**{¶30}** In Vicario's fourth assignment of error, he contends that his right to effective assistance of counsel was violated when his counsel did not object to highly prejudicial and irrelevant testimony at trial and to highly prejudicial and improper statements by the prosecutor during rebuttal closing argument, and he failed to seek a continuance to allow for finding a missing witness.

Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *State v. May*, 8th Dist. Cuyahoga No. 102482, 2015-Ohio-4275, 49 N.E.3d 736, ¶ 32, citing *Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18.

*State v. Bell*, 8th Dist. Cuyahoga No. 105000, 2017-Ohio-7168, ¶ 38.

**{¶31}** We have already decided that Dowell's testimony was not prejudicial. We have also ruled that the state's rebuttal closing argument did not deprive Vicario of a fair trial. However, we must address Vicario's claim that his counsel was ineffective because counsel failed to seek a continuance to attempt to locate an unavailable witness.

"In order to obtain a reversal on ineffective assistance of counsel based on a failure to subpoena a witness, a defendant must demonstrate that the testimony of the witness would be of significant assistance to the defense." *State v. Varner*, 5th Dist. Stark No. 98CA00016, 1998 Ohio App. LEXIS 4707 (Sept. 14, 1998), quoting *State v. Reese*, 8 Ohio App.3d 202, 203, 456 N.E.2d 1253 (1st Dist.1982).

*Cleveland v. Thompson*, 8th Dist. Cuyahoga No. 101038, 2015-Ohio-412, ¶ 11.

{¶32} The witness in question was placed on the state's witness list. However, the state was not able to locate him. Vicario's trial counsel stated in his opening statement that he believed that there was a witness who gave the police a physical description that did not match Vicario. During trial, the state presented testimony from Detective Joselito Sandoval ("Det. Sandoval"), stating that the witness initially gave Vicario's description, but added that the shooter may have had dreadlocks. Vicario does not have dreadlocks. Det. Sandoval stated that the witness was unable to make a positive identification of the shooter. Det. Sandoval stated that the witness requested a profile picture of the shooter because the witness saw the side of the shooter's face as the shooter ran away. A profile picture could not be presented to the witness during the photo array. (Tr. 572.) The record reveals that the testimony the unlocated witness would have given was entered through the testimony of Det. Sandoval in the presence of the trial court. Vicario has not demonstrated that the witnesses' presence would be of significant assistance to him. We find that a continuance to subpoena the witness was unnecessary because the testimony of the witness would not have been of significant assistance to the defense.

{¶33} In oral argument, counsel stated that trial counsel failed to proffer the need to seek a continuance to try to locate the witness. "A failure to proffer does not constitute ineffective assistance of counsel * * *." *State v. Warren*, 8th Dist. Cuyahoga No. 83823, 2004-Ohio-5599, ¶ 31. "[A]s a matter of trial strategy, counsel may have declined to make a proffer which would

have highlighted the weakness of the defense, and we will not criticize what appears to be a sound trial strategy." *Id*., citing *State v. White*, 82 Ohio St.3d 16, 693 N.E.2d 772 (1998).

**{¶34}** Vicario's fourth assignment of error is overruled.

**{¶35}** Judgment affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY